**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


UNITED STATES OF AMERICA

v.                                    CASE NO.  5:18cr8-RH

JAMI HILL,

       Defendant.

_____/


## ORDER DENYING THE MOTION TO SUPPRESS


The defendant delivered a package to a post office for mailing. A postal inspector caused the package to be held overnight and then, with the defendant's consent, opened it. Finding cash and pills that appeared to be illicit, the postal inspector seized the defendant's cellular phone, asked for and received from the defendant the pass code for unlocking the phone, obtained a warrant 12 days later, and caused a forensic search to be made of the phone's contents.

Following an evidentiary hearing, this order holds that there was probable cause to seize the package, that the defendant voluntarily consented to the search of the package, that the defendant voluntarily provided the pass code, that holding the phone for 12 days before obtaining a search warrant was reasonable—though just barely—and that the search warrant was valid. This order sets out the court's

findings of fact and conclusions of law and denies the defendant's motion to suppress.

I

On Thursday, August 24, 2017, the defendant Jami Hill delivered a package to a post office in Marianna, Florida for delivery by express mail to an address in the State of Washington. Later that day, before the package left the building, a postal employee noticed a strong odor that she believed was marijuana. The employee reported this to her supervisor, who notified a postal inspector. The package was held at the post office overnight.

On the morning of Friday, August 25, the postal inspector called Ms. Hill, told her the package smelled of marijuana, told her he wished to make sure the package did not contain anything illegal, and asked her to come to the post office. Ms. Hill voluntarily agreed to do so.

At the post office, still on August 25, Ms. Hill said the package smelled of marijuana because she had previously used it to store legal medical marijuana in the State of Washington. Ms. Hill voluntarily gave consent for the postal inspector to open the package. The inspector did so. The package did not contain marijuana but did contain roughly 200 multicolored pills that appeared to be illicit and, as it turned out, contained cocaine and methylenedioxymethamphetamine or "MDMA." The package also contained more than $8,000 in cash.

The inspector seized not only the package and its contents but also Ms. Hill's cell phone. The inspector did not ask for or receive Ms. Hill's consent to the seizure of the phone. He did ask Ms. Hill for the pass code for unlocking the phone. She voluntarily provided it.

The inspector took the phone back to his office in Tallahassee—roughly 60 miles from Marianna—on that same afternoon, that is, on Friday, August 25. He began drafting an affidavit in support of a search warrant for the phone on Monday, August 28. The inspector presented the draft to an Assistant United States Attorney, probably by August 29. The AUSA disapproved the format and returned the draft to the inspector for further work. The record does not explain why the AUSA did not work with the inspector to change the format and finalize the warrant that day. This was not a complex investigation or warrant application.

Before finishing the affidavit, the inspector was unexpectedly called out of town on Friday, September 1 to assist with an investigation in North Carolina. A letter carrier had been shot. The inspector asked another inspector to finish work on the affidavit. With that inspector's assistance, the process was completed. An AUSA presented a warrant application to a magistrate judge on Wednesday, September 6. This was 12 days after the phone was seized. The magistrate judge issued a warrant, and in due course a forensic search of the phone was conducted.

## II

The findings in section I are based in part on credibility determinations. In general, I credit the inspector's testimony. I also credit the testimony of his supervisor, who was present during the events of August 25. But on the conflict between the inspector and the supervisor on whether Ms. Hill provided a pass code or used a fingerprint to unlock the phone and change the settings so that the phone remained unlocked, I find that the inspector's memory is correct; the supervisor's is not. The ruling on the motion to suppress would be the same either way.

To the extent Ms. Hill's account differs from that of other witnesses, I do not credit her testimony. She was not arrested or threatened with arrest. She was free to leave the encounter with the inspector and knew it. More importantly, a reasonable person in her position would have understood she was free to leave the encounter. Ms. Hill voluntarily consented to the search of the package and voluntarily provided the pass code.

## III

The package smelled of marijuana. Ms. Hill never denied it. Quite the contrary. She provided an ostensibly innocent explanation, apparently acknowledging the smell of marijuana.

Ms. Hill insists that the postal employee who set the process in motion— who first alerted her supervisor to the smell, leading to notice in turn to the postal

inspector—was not trained in detecting drug packages or in recognizing the odor of marijuana. But by all accounts, this was a strong odor. The smell of marijuana is known by many, including this employee, at least according to her unrebutted testimony. There was probable cause to believe this package contained marijuana. Postal authorities were entitled to hold the package for further investigation.

## IV

Ms. Hill voluntarily went to the post office. She was not given warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), but warnings are required only when a person is in custody as that term is defined for this purpose. Ms. Hill was not in custody. *See, e.g.*, *United States v. Giovanni*, No. 5:17cr32-RH, 2018 WL 2670054 (N.D. Fla. June 2, 2018) (setting out the custody standard and collecting authorities).

Ms. Hill consented to the opening of the package. She is not entitled to suppress its contents.

## V

Ms. Hill had delivered for mailing a package with over $8,000 in cash and a substantial quantity of pills that appeared to be illicit drugs. She gave a facially implausible explanation—that she did not know the pills were in the package. She gave an explanation for the cash that did not match in all details the explanation

given by the intended recipient. There was probable cause to seize the phone and hold it until a warrant application could be submitted to a judge.

## VI

The inspector asked Ms. Hill to provide the phone's pass code. She now says this violated the Fifth Amendment, but it did not. Ms. Hill was not in custody. The inspector had every right to ask for the pass code as part of this voluntary encounter. Ms. Hill voluntarily provided the code. This violated neither the Fourth Amendment nor the Fifth.

Ms. Hill says, though, that a new hearing should be convened, so that she may fully explore the issue of whether she was in custody for *Miranda* purposes. The request is unfounded for two reasons, either of which would be sufficient standing alone.

First, Ms. Hill had a full and fair opportunity to explore the custody issue at the original hearing. Indeed, she did fully explore that issue. Thus, for example, she inquired about the lack of any explicit statement to Ms. Hill that she was free to leave the encounter with the inspector at the post office. She inquired at some length about the location of doors and who stood or sat where during the encounter.

Second, an additional hearing would not change the result. The record is already well developed on the custody issue, with no realistic possibility that additional evidence would make a difference.

VII

When, as here, law enforcement officers seize a computer or electronic device that they can lawfully search only upon issuance of a warrant, they must apply for a warrant without unreasonable delay. The Eleventh Circuit has repeatedly said so.

In *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), a warrant application was submitted 21 days after officers seized a computer. The district court denied a motion to suppress, but the Eleventh Circuit reversed. The court held that, under the circumstances of that case, 21 days was too long. Neither the case nor the warrant application was complex.

In *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012), in contrast, the delay between seizure of a computer and a warrant application was 25 days. The district court denied a motion to suppress, and this time the Eleventh Circuit affirmed. The case and warrant application were complex; the investigation had continued for roughly a year and involved numerous agents. The Eleventh Circuit said the permissible delay in applying for a warrant is not subject to a bright-line rule and instead requires a close analysis of the facts. In some circumstances, the

court said, 90 minutes may be too long, while in other circumstances a three-month

delay may be reasonable. *Id*. at 614.

Unreported decisions following the same approach include *United States v.*

*Morgan*, 713 F. App'x 829 (11th Cir. 2017) (holding that a 17-day delay was not

too long for a phone the defendant had admitted was used for illegal activity and

had loaned to another person engaged in illegal conduct), and *United States v.*

*Atkins*, 702 F. App'x 890 (11th Cir. 2017) (holding, on plain-error review on an

undeveloped record, that a 30-day delay was not unreasonable).

*Mitchell* explicitly listed, as a factor that might support a delay, an

"overriding circumstance . . . necessitating the diversion of law enforcement

personnel to another case." *Mitchell*, 565 F.3d at 1353. In the case at bar part of the

delay was attributable to precisely such a circumstance—the shooting of a letter

carrier in North Carolina.

Moreover, here, as in *Laist*, the officer began work on the warrant

application promptly; he did not simply conclude, as did the officer in *Mitchell*,

that the situation was not urgent.

Part of the delay, too, may have been attributable to the Labor Day holiday.

The 12 days from seizure to warrant application consisted of 7 workdays and 5

days on weekends or holidays.

Cellular phones serve important interests. Here, for example, Ms. Hill used her phone to communicate with her children and her father, with whom she shared a vehicle, at least on this day. As a matter of good practice, an officer or prosecutor should submit any necessary warrant application as soon as possible after seizing a phone. But as *Mitchell* and *Laing* make clear, the governing standard under the Fourth Amendment is not "as soon as possible." The standard is within a reasonable time. Under all the circumstances, the inspector met that standard here.

## VIII

Upon submission of the application, the magistrate judge properly issued a warrant. The Fourth Amendment does not require suppression of the evidence seized pursuant to the warrant.

## IX

For these reasons,

IT IS ORDERED:

The motion to suppress, ECF No. 28, as supplemented, ECF No. 33, is denied.

SO ORDERED on July 5, 2018.

s/Robert L. Hinkle
United States District Judge